WILLIAM CLAYTON

*v.*

GEORGE FEIG.

*Opinion filed December 20, 1900—Rehearing denied February 8, 1901.*

1. APPEALS AND ERRORS—*when decision of questions on first appeal is conclusive.* The decision of certain questions adversely to the appellant on first appeal is conclusive of such questions on second appeal, where no additional evidence was heard at the second trial.

2. LIMITATIONS—*second payment of taxes is unavailing.* Seven successive years' payment of taxes by the defendant in ejectment is not sustained by evidence that the plaintiff and the defendant each paid the taxes on the property for nineteen years, during which period, with the exception of three times, the plaintiff paid them first, thus satisfying and discharging them and rendering the defendant's subsequent payment unavailing.

3. BOUNDARIES—*verdict on conflicting evidence and under correct instructions should stand.* In ejectment the question whether a boundary line was established where the defendant built a new fence is one of fact for the jury, and their verdict should not be disturbed on appeal, where they were fairly instructed as to the law and the evidence is conflicting and irreconcilable.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding.

JOHN B. HAY, and IRWIN & STREUBER, for appellant.

BARTHEL & FARMER, and W. E. TRAUTMANN, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an appeal from a judgment in ejectment, rendered by the circuit court of St. Clair county in favor of appellee, against appellant. The case has been tried three times before a jury, resulting each time in a verdict for appellee. The case was before this court at a former term upon substantially the same evidence found in this record, (*Clayton* v. *Feig,* 179 Ill. 534,) when a number of the questions raised on this appeal were determined ad-

versely to appellant. As to such questions, where no additional evidence was introduced on the last trial, that decision is conclusive. *Elston* v. *Kennicott,* 52 Ill. 272.

Noah Sparks died seized of the south half of the north-west quarter of section 3, township 2, north, range 8, west, of which the premises in controversy formed a part, and in 1856, under a partition proceeding between his heirs, the tract was divided by commissioners, east and west, into two lots, the north one being designated in their report as lot 4, containing 50.53 acres, and the south one as lot 2, containing 43.52 acres. Lot 4 was set off to Margaret Sparks and lot 2 to Elizabeth Bevirt, daughters of Noah Sparks. The commissioners, in their report, failed to locate the ground line between the lots, or designate it in any way except by stating the number of acres in each lot, as above. As a matter of fact there were but 85.91 acres in the tract, being 8.14 acres less than the commissioners estimated it to contain. March 18, 1864, Elizabeth Bevirt and husband conveyed the south lot to one Breig. On March 19, 1864, Breig and wife conveyed the same to John Malter, and on March 30, 1868, John Malter and wife conveyed to John Feig by the description "43.52 acres off the south part of the south half of the north-west quarter of section 3," etc. On the 3d day of January, 1897, Feig and wife conveyed to plaintiff by the same description. In the spring of 1859 Breig took possession of this lot and built a fence on the north line thereof, treating it as containing 43.52 acres, and from that time until 1878 he and his grantees continued to hold possession to that fence. As to the north lot, on August 29, 1877, Patrick Henry and wife (formerly Margaret Sparks) conveyed to defendant, William Clayton, a part thereof by the description, "20 acres off the east end of lot No. 4, to be so surveyed that the west line thereof shall run due north and south across said lot, the grantors excepting and reserving a strip of land thirty feet in width off the south side of the 20-acre tract above de-

scribed, said strip to extend from the west side of said
20-acre tract to the center of the road, as now located,
running from Collinsville to Belleville; said lot No. 4 be-
ing that part of the south half of the north-west quarter
of section 3, township No. 2, north of range 8, west of the
third principal meridian, allotted to Margaret S. Henry,
grantor herein (then Margaret Sparks) and now one of
the heirs-at-law of Noah Sparks, deceased, and so desig-
nated by plat of partition in suit of *Mary Sparks* v. *John
M. Bevirt et al.*, recorded in book O," etc.   Subsequently,
on March 18, 1882, the same grantors conveyed to the
same grantee another part thereof, by the description:
"All of lot number four (4), said lot being that part of the
south half of the north-west quarter of section number
three (3), township number two (2), north, and range num-
ber eight (8), west of the third principal meridian, allot-
ted to the said Margaret S. Henry as one of the children
and heirs-at-law of Noah Sparks, deceased, and so desig-
nated on the plat of partition in suit of *Mary Jane Sparks*
v. *John M. Bevirt et al.*, recorded in volume O, on pages
5, 6, 7 and 8, of the records of St. Clair county, Illinois,
except therefrom two (2) tracts heretofore conveyed by
the grantors, to-wit: Ten acres off the west end of said
lot, conveyed to the Sharpshooters' Society of Collins-
ville by deed recorded in volume No. 132, on page No. 371,
of the records in the recorder's office of said St. Clair
county, (all the coal under said 10 acres, with the right
to mine and use the same, being excepted and reserved
in said deed,) and twenty (20) acres off of the east end of
said lot, conveyed to the said William Clayton by deed
recorded in volume No. 144, on page No. 455, of said re-
corder's office,—a strip thirty (30) feet wide off the south
side of said 20 acres, extending from its west side to cen-
ter Belleville road, being excepted and reserved in said
deed, leaving 20 acres, more or less, and said strip, and
all the coal under said 10 acres, as the real estate herein
conveyed, situated in the county of St. Clair, in the State

of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State." In 1878, after he purchased the first 20 acres, Clayton had a survey of the land made, and built a new fence, placing it south of that built by Breig in 1859, on the line established by his survey, enclosing with his land the strip described in the declaration, and from that time until the present has remained in possession of the same.

After reciting the facts substantially as above stated, on the first hearing in this court we said (p. 538): "Plaintiff claims * * * that at the time the defendant took possession of it, (the premises in controversy,) John Feig, his grantor, had acquired a good title under section 6 of the Limitation act, (Starr & Curtis,—2d ed.—chap. 83,) and we think this position must be sustained. The deed from John Malter and wife to John Feig, dated, as we have seen, March 30, 1868, describes the land, not according to the plat in the partition suit, but as '43.52 acres off the south part of the south half of the north-west quarter of section No. 3, in township No. 2, north, range No. eight (8), west of the third principal meridian,' which description includes the land in suit. It is not denied that his grantor was then in possession to the north line of the 43.52 acres, and that John Feig took possession of the land under his deed and continued to occupy it until 1878, when defendant built the new fence. The proof also shows that John Feig paid the taxes assessed on the whole 43.52 acres during his occupancy thereof, to the date of his conveyance to plaintiff. * * * We think plaintiff must be held to have shown title in himself under the statute above cited." We are of the opinion that the record on this appeal clearly sustains that finding of the court, and that it must be held now, as it was held then, that appellee was the owner of the legal title to the premises described in the declaration at the time the new fence was built by appellant in 1878.

As against that title the appellant sets up the same Statute of Limitations, claiming color of title, adverse possession since the building of the fence in 1878, and payment of taxes. When the case was here before we held against such contention, on the ground that appellant had failed to show, in connection with his possession and color of title, payment of taxes for seven successive years. It is insisted on this appeal that appellant has shown the payment of taxes subsequent to 1878 for a sufficient length of time, in connection with his possession and color of title, to perfect the title in himself under said statute. We are of the opinion that such contention is not sustained by the evidence. An examination of the record shows that Feig and Clayton each paid the taxes on the premises in controversy from 1879 to 1898, and that, with the exception of the years 1882, 1884 and 1885, Feig paid them first. This being true, appellant failed to show payment of taxes as required under said section 6 of the Limitation act. So soon as payment of the taxes thereon was made by Feig the same were satisfied and discharged, and the subsequent payment thereof by Clayton could avail him nothing. *Morrison* v. *Kelly*, 22 Ill. 609; *Ross* v. *Coat*, 58 id. 53; *Bolden* v. *Sherman*, 101 id. 483.

It is further contended by appellant that the dispute over the line in question was settled by the adjoining owners at the time the new fence was built, in 1878. When the case was here before we said (p. 541): "The law applicable to this branch of the case, deducible from the decisions of this court, may be stated thus: Where there is a dispute between adjoining owners of land as to the true boundary line, or that line is unascertained, they may establish it, first, by parol agreement and possession in pursuance thereof, and the line so agreed upon will be binding upon them and their privies in estate; second, such an agreement may be implied from the unequivocal acts and declarations of the parties and acqui-

escence for a considerable length of time; third, such an agreement, either express or implied, is enforceable both at law and in equity, whether the period of limitation has run or not; fourth, the line may be established by way of estoppel, without any agreement, when the parties have had undisturbed possession in conformity thereto for more than twenty years,"—and reversed and remanded the case by reason of the fact that the trial court had failed to announce correctly, in its instructions to the jury, such rule. Whether or not, under the rule as above announced, the division line between the land of the parties was established at the place where the new fence was built, is a question of fact to be determined by the jury under proper instructions by the court. The evidence bearing upon that question is conflicting and irreconcilable. The jury having found in favor of appellee, and it appearing that they were fairly instructed as to the law, their verdict should not be disturbed. In *Buchanan* v. *McLennan*, 105 Ill. 56, we say (p. 60): "It was within the province of the jury to fully consider, weigh and reconcile it, (the evidence,) so far as that could be done, and where they were unable to do so, then to reject such portions as they believed were not entitled to credence. We must presume that in the discharge of their duty they did this, and under well and long established rules of practice we are unable to interfere."

We are of the opinion that the jury were properly instructed as to the law, that the court committed no error in the admission or exclusion of evidence, and that the judgment of the circuit court should be affirmed.

*Judgment affirmed.*