[Civ. No. 343.   Third Appellate District.—July 31, 1907.]

## COMMERCIAL NATIONAL BANK OF OGDEN, Respondent, v. JOHN J. SCHLITZ, Appellant.

NEW TRIAL—FILING OF NOTICE OF INTENTION—NEGLECT OF CLERK—RIGHTS OF MOVING PARTY.—Where counsel for the party moving for a new trial served and delivered to the clerk on the day of service, and within due time, the notice of intention to move for a new trial, and, without fault on the part of the counsel, the clerk neglected to indorse the document as filed within the time, the moving party should not lose his rights by reason of the neglect of the clerk to do his official duty, and the court may treat the notice as filed on the date of its service and delivery to the clerk.

ID.—FEE NOT DEMANDED—PAYMENT AFTER TIME LIMITED.—Where the fee for filing the notice of intention was not demanded, and the clerk testified that failure to pay it when the notice was received would have made no difference, the fact that it was paid a month after the notice was delivered to the clerk, when the failure to mark it as filed was discovered, cannot affect the rights of the moving party.

ID.—ORDER GRANTING NEW TRIAL—REVIEW UPON APPEAL.—Where an order granting a new trial is general, and no reason therefor is given, if any sufficient reason for granting it can be found, the order must be affirmed.

ACTION TO QUIET TITLE—TAX DEED TO DEFENDANT—INVALIDITY—UNCERTAIN DESCRIPTION.—In an action to quiet title, when the defendant claims under a tax deed to defendant of a portion of the premises, the description of the part covered by the deed must be definite, certain and intelligible of itself, and not such as to require evidence *aliunde* to render it certain. A description of the land as "a strip of 50 acres on the north line of Fractional N. W. ¼ of section 7," etc., not calling for a strip along the whole length of that line, is too uncertain to support the tax title.

ID.—PRESCRIPTIVE TITLE UNDER TAX DEED NOT SHOWN—PAYMENT OF SUCCESSIVE TAXES—DOUBLE ASSESSMENT—INTERRUPTION.—A prescriptive title of defendant under the tax deed is not made out where there was an interruption in the payment of subsequent taxes on the land sold, notwithstanding a double assessment, by the first payment of all taxes assessed on the entire property to the plaintiff, before the payment of the second or double tax which the defendant had caused to be assessed to himself, on the land sold. In such case defendant cannot claim compliance with the statute.

APPEAL from an order of the Superior Court of Tulare County granting a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

C. L. Russell, for Appellant.

T. E. Clark, for Respondent.

CHIPMAN, P. J.—Action to quiet title. Findings and judgment were in favor of defendant. Plaintiff moved for a new trial, which was granted, and defendant appeals from the order.

Defendant urges that there was no proper bill of exceptions before the trial court on which to base a motion for a

new trial, for the reason that the notice of intention was not filed in time. The notice of decision was served on plaintiff's counsel April 17, 1905. Notice of intention to move for a new trial was likewise served on April 24, 1905, but it is claimed by defendant that it was not filed with the clerk until May 27, 1905. There is evidence tending to show that counsel for plaintiff handed the notice of intention to the clerk, with other papers, on April 24th, but for some reason not clearly explained the clerk failed on that day to indorse the paper as filed. Later, on May 27th, his attention was called to the omission, and on this latter day he indorsed the paper: "Filed April 24th, 1905. T. E. Clark, Clerk." The testimony of the clerk and of plaintiff's counsel was taken on the point, and we think there was sufficient to justify the conclusion of the trial court that the notice was in fact left with the clerk on the 24th of April, which was in time. His failure to mark the paper on that day as then filed is not shown to have been through any fault of defendant's attorney, and we do not think plaintiff should suffer from an omission of the clerk to perform an official duty. The fact that the fee was not paid until May 27th, when the omission was discovered, should not affect the question, for the clerk testified that failure to pay the fee on April 24th would have made no difference. In *Davis* v. *Hurgren,* 125 Cal. 48, [57 Cal. 684], cited by appellant, the clerk refused to file the notice because the fee was not paid in advance. Here no fee was demanded, and there was no refusal to file the notice. Nor can it be reasonably said that plaintiff's counsel was inexcusably neglectful. The circumstances are fully set forth in the testimony of counsel and of the clerk, and were such as to justify the court in treating the notice as filed April 24th. (Code Civ. Proc., sec. 473. See, also, *Stonesifer* v. *Kilburn,* 94 Cal. 33, [29 Pac. 332]; *Cameron* v. *Arcata R. R. Co.,* 129 Cal. 282, [61 Pac. 955]; *Murphy* v. *Stelling,* 138 Cal. 642, [72 Pac. 176].)

Plaintiff and defendant claim through a common source of title, plaintiff by deed from Lola E. Hill and Oscar E. Hill, dated July 8, 1893, duly recorded August 15, 1893, and defendant by tax deed of the collector of the Kern and Tulare Irrigation District, dated March 1, 1898. The premises described in plaintiff's complaint and deed is a tract of land described by metes and bounds, being a part of the northwest quarter of section 7, township 24 south, range 26 east, Mount

Diablo base and meridian, containing 149.05 acres.   The premises, part of which is claimed by defendant, as appears from his said deed, was assessed for the year 1896 to Lola E. Hill, by the collector of said district, and is described therein as the "Frac. N.W. ¼ of Section 7, Township 24 South, Range 26 East," and that the portion sold to defendant for delinquent taxes is described as a "strip of 50 acres on the north line of fractional N.W. ¼ of section 7, Township 24 South, Range 26 East, Mount Diablo Base and Meridian."

It appears from the assessment-rolls introduced by plaintiff that the tract was assessed to plaintiff for the years 1897 to 1904, inclusive.   The acreage and description varied in different years (omitting here all of the part of section described), sometimes by metes and bounds, as in plaintiff's deed (1897, 1898, 1899, 1903, each assessment 153 acres, except 1903 for 149 acres) ; again, northwest quarter (1900) ; south 110 acres of northwest quarter (1901, 1902) ; and fractional south 149 acres of northwest quarter (1904).   Payment in full of taxes for these assessments was shown.   Defendant introduced assessment-rolls showing assessments to defendant (omitting all after part of section described) as follows: 1898, north 50 acres of northwest quarter (marked in red ink as follows, to wit) : "Assessed also to Commercial National Bank of Ogden, Utah, Vol. 3, Page 2."   (Marked also in lead pencil on margin of book) : "Double assessed Page 2, Vol. 3, T. C., Take Cr." 1899, same description and same note in red ink; 1900, fractional northwest quarter . . . 50 acres; 1901, fractional northwest quarter (being north 50 acres) ; 1902, north 50 acres, fractional northwest quarter; 1903, north 50 acres of fractional northwest quarter; 1904, north 50 acres of fractional northwest quarter. Defendant introduced receipts showing payments in full of assessments to him.

There is but little evidence outside of these official records. It appeared from the testimony of defendant and his son, and is uncontradicted, that defendant went into possession, as found by the court, July 20, 1898.   Defendant testified: "I measured the land off myself so as to inclose what I thought was 50 acres and fenced it in.   I measured fifty acres off of the north side of the land mentioned in plaintiff's complaint. I found the stakes at the corner of the land, placed there by the surveyors.   I made my measurements according to each stake."   He also testified that he has cultivated or pastured

6 Cal. App.—12

the land ever since. He explained that the northwest quarter of section 7 became fractional in the distribution of an estate by a strip being cut off along the east side and a strip cut off the south side, thus leaving a fractional northwest quarter of 149 acres. He testified that he had never had the land claimed by him surveyed and never notified plaintiff of his possession; that the land claimed by him was assessed in 1898, but he did not pay the taxes for that year; that the first taxes he paid was January 3, 1900, "for the taxes assessed to him for the year 1899"; that he never paid any of the taxes assessed to plaintiff for any year. It was admitted that the land in question is situated within the boundary of what was a legally constituted district, called the Kern and Tulare Irrigation District, under the provisions of the act approved March 7, 1887 (Stats. 1887, p. 41), and the acts supplemental to and amendatory thereof. Defendant testified that he claimed the land through purchase "on the delinquent assessment of 1896"; that this assessment was "levied to pay the indebtedness of the district for disorganizing. The district had been running several years without levying any assessment to pay expenses (the last previous assessment was in 1892) and had got considerably in debt; and the assessment was intended to cover, and did cover, all the debts of the district; the N. W. ¼ of section 7, Township 24 South, Range 26 East, was assessed to Lola E. Hill, and the taxes were not paid on it and it was sold for the delinquent assessment in 1896, in the spring of 1897, and I bought the north 50 acres and paid the assessment. The tax collector of the irrigation district issued a certificate of sale to me, and it was not redeemed, and on March 1, 1898, the tax collector made me a deed to the land."

Some letters were introduced by plaintiff, without objection, from which it appeared that on January 23, 1898, defendant wrote plaintiff that he had purchased 50 acres of the northwest quarter at delinquent tax sale, but did not want the land and would deed it to plaintiff for what it cost defendant. Plaintiff replied that defendant's letter was the first intimation it had of any such irrigation district as defendant mentioned; that plaintiff's title had been a matter of record since 1893. July 2, 1898, defendant replied, stating further facts about the district; that the last assessment prior to 1896 was in 1892, to Mrs. Lola Hill or Oscar Hill, and was

paid; that the assessment of 1896 was to Mrs. Lola Hill, to whom notices were sent; that he supposed the land belonged to her "until some time ago, being at the Assessor's office in Tulare County, giving in the list of my property, among which was the 50-acre piece purchased at delinquent sale, I found that the Commercial National Bank was paying the taxes on the N. W. ¼ . . . whence my communication to you." He then states: "Now regarding the . . . district, it is out of existence, the people in the district after having paid some $35,000 in taxes, and the district being about $10,000 in debt, and no prospect of getting water on the lands of the district decided on disorganizing the district, which could be done legally by first paying outstanding indebtedness, and the people voted and authorized the assessment of 1896. The assessment was made and collected and the delinquent property was sold, the same as state and county taxes, and on the 11th day of April, 1898, in the Superior Court of Kern County, upon showing that the affairs of the district had been wound up according to law and the outstanding debts of the district had all been paid, the court agreed (decreed?) that the . . . district should forever be dissolved." Plaintiff replied February 5, 1898, stating that the tax not having been assessed to plaintiff makes it void, as defendant will learn by consulting *Gwynn* v. *Dierssen*, 101 Cal. 563, [36 Pac. 103]; called attention again to its deed of 1893 and that defendant's tax was not levied until 1896. Thus ends the correspondence, and this is substantially all the evidence in the case.

Briefly summarized, the court found that the land described in plaintiff's complaint was, in the year 1896, "duly and properly assessed by the assessor of said district pursuant to and as required by law . . . to Lola E. Hill"; that all the property of the district was duly equalized in that year, and that to pay the outstanding indebtedness of said district its board of directors duly levied an assessment upon all the lands therein, including the said lands described in plaintiff's complaint; that said assessment on plaintiff's said land became a lien thereon and was never paid; that on February 27, 1897, said property was duly offered for sale to pay said assessment, and defendant became the purchaser of the "north fifty acres of the tract of land described" in plaintiff's complaint; that said collector of said district executed and de-

livered duplicate certificate of sale of said property (reciting the facts as to said sale) a copy of which was delivered to defendant; that no redemption was made, and said collector, on March 1, 1898, executed and delivered to defendant a deed to said north fifty acres of the land described in plaintiff's complaint, which was duly recorded April 16, 1898. The court then finds that defendant entered into possession of said land "under and by virtue of said deed" and constructed a fence inclosing the said land, and at all times since July 20, 1898, "he has been in the quiet, peaceable, continuous, actual, open, notorious, adverse and exclusive possession of said fifty acres of land, . . . cultivating and using the same . . . and claiming the same adversely to all other persons for more than five years before the commencement of this action." As conclusion of law the court finds that defendant was the owner of the land in question at the commencement of the action, and is now such owner. The original complaint was filed June 22, 1904, and the amended complaint on August 6, 1904. Plaintiff, in its specifications, challenges the sufficiency of the evidence substantially as to all the findings in defendant's favor.

The reason for granting the motion for a new trial is not given, but if any sufficient reason can be found the order must be affirmed. If, however, the proceedings leading up to defendant's tax deed were legal, and a valid title passed to defendant thereunder, it is immaterial whether the findings as to defendant's adverse possession are supported by the evidence. Likewise, if title by prescription is established, the findings as to the tax title may be disregarded. It becomes necessary, therefore, to examine both sources of title upon which defendant relies.

Respondent attacks the findings on the following grounds: First, that the assessment in 1896 was made under the disorganizing act of 1893 (Stats. 1893, p. 523) and not under the act of March 7, 1887 (Stats. 1887, p. 254), and was therefore void because unauthorized by the act of 1893; second, that the title to the land in 1896 when assessed to Lola E. Hill stood of record in plaintiff and could not legally be assessed to any person other than plaintiff; third, that the attempted description of the land claimed by defendant as bid in by him and subsequently assessed to him does not definitely describe any land; fourth, that the whole of the

fractional northwest quarter of said section was assessed to plaintiff at the time the said 50-acre tract was bid in by defendant, and at all times while subsequently assessed to defendant, which latter was a double assessment and void under section 3607, Political Code, and the concurring opinion in *Cavanaugh* v. *Jackson,* 99 Cal. 675, [34 Pac. 509], and the facts do not establish title by adverse possession.

### THE TAX TITLE CONSIDERED.

We do not think that the facts warrant the assumption that the assessment was made under the act of 1893. It was doubtless made in anticipation of disorganizing the district, but not as a part of or through proceedings for that purpose. The collector's deed recites that the levy was made for the year 1896 by virtue and under the provisions of the act of March 7, 1887, and its amendatory acts. The letter of defendant to plaintiff, relied upon by the latter as showing that the assessment was made under the act of 1893, does not purport to be more than an outline narrative of certain proceedings, but does not show that the levy was under the act of 1893. The decree of the court, dissolving the corporation, was not made until two years later, and could not then have been made except upon a showing in the complaint and by the evidence that the debts of the corporation were paid. The record is not before us, and we must presume regularity so far as disorganization is concerned.

By the act of 1897 (Stats. 1897, p. 254), the assessor was required to assess all real property in the district to the persons who own, claim, have the possession or control the property, and he must specify in the assessment-book: "(a) The name of the person to whom the property is assessed (if the name is not known to the assessor the property shall be assessed to 'unknown owners')." Section 48 provides: That the matter recited in the certificate of sale must be recited in the deed and such deed duly acknowledged or proved is *prima facie* evidence that: "(a) The property was assessed as required by law; . . . (c) that the assessments were levied in accordance with law"; and "such deed . . . is (except as against actual fraud) conclusive evidence of the regularity of all the proceedings from the assessment by the assessor inclusive, up to the execution of the deed." Like provisions are found in the act of 1887. Section 32 of the act of 1887

(also section 50, Act of 1897) provides: "When the land is sold for assessments, correctly imposed, as the property of a particular person, no misnomer of the owner or supposed owner, or other mistake relating to the ownership thereof, affects the sale or renders it void or voidable." Under the provisions of section 3628 of the Political Code, before its amendment in 1880, it was held, as in *Gwynn* v. *Dierssen*, 101 Cal. 563, [36 Pac. 103], that the assessment must be made to the owner, and if not known, then to unknown owners. But in *Escondido H. S. Dist.* v. *Escondido Seminary*, 130 Cal. 128, [62 Pac. 401], it was held that an assessment to a person not the owner does not affect its validity. To the same effect, *Klumpke* v. *Baker*, 131 Cal. 80, [63 Pac. 137, 676]. It was said in *Lake County* v. *Silver Bank etc. Min. Co.*, 66 Cal. 20, [4 Pac. 876] : "The ascertainment of the name of the owner is a matter with respect to which the assessor has discretionary power, and his judgment or conclusion in regard to it is final, so far as the validity of the tax is concerned." In *Klumpke* v. *Baker*, 131 Cal. 80, [63 Pac. 137, 676], the court said: "The name of the owner of the property assessed is an incidental provision for the sake of convenience, but a failure to give the correct name of the owner is declared by the statute not to impair the assessment." Again: "The assessment is not against the owner, but is of the property, and that must be correctly described." And this brings us to the remaining question touching the validity of the title based upon the tax deed.

The land, as said in the Klumpke case, must be correctly described. The description must be definite, certain and intelligible of itself, and not such as to require evidence *aliunde* to render it certain. (*Keane* v. *Cannovan*, 21 Cal. 302, [82 Am. Dec. 738] ; *People* v. *Mahoney*, 55 Cal. 286, [25 Pac. 442] ; *People* v. *Central Pacific Co.*, 83 Cal. 400, [23 Pac. 303] ; *State* v. *Central Pacific R. R. Co.*, 21 Nev. 101; *Central Pacific Co.* v. *Nevada*, 162 U. S. 525, [16 Sup. Ct. Rep. 885].) "A description sufficiently certain to convey land between man and man, and which, if contained in an agreement to convey, would authorize a court of equity to decree specific execution, will not answer in the proceeding to enforce the collection of a tax." (Blackwell on Tax Titles, p. 124.) Defendant's deed takes its origin in and must be governed by the description of the least quantity of the land

which defendant was willing to take and pay the assessment. This description reads as follows: "Strip of 50 acres on the north line of fractional N. W. ¼ of section 7," etc. We do not think that this description meets the requirements of the rule above stated. Quantity is the least certain element of description, and is no description at all unless a definite and certain basis for its ascertainment is supplied. The north line of the 50-acre tract taken is not necessarily coincident with the entire north line of the northwest quarter; the description only calls for 50 acres *on* that line, but not along its whole length. If plaintiff and defendant had been bargaining for 50 acres on the north line, parol evidence might have been admissible to show their intention, but not so in tax proceedings, in their nature *in invitum*. The rule has been laid down that where a given acreage is sold "*off* the side of a quarter section" it must be taken in a parallelogram, and when out of the corner it must be taken in a square. (4 Am. & Eng. Ency. of Law, p. 789.) Even this rule could not have been applied owing to the irregular shape of the fractional tract out of which defendant sought to take the 50 acres. The uncertainty of description was attempted to be corrected in subsequent assessments, but obviously this cannot avail defendant as supporting his tax title, however much it may assist his claim by prescription.

### THE TITLE BY ADVERSE POSSESSION CONSIDERED.

The title by prescription turns principally upon the payment of the taxes by defendant. It was shown that plaintiff paid the taxes levied and assessed upon the fractional northwest quarter of section 7 for the years 1897 to 1904 inclusive; that defendant had the land claimed by him assessed for 1898 and thence each year to 1904 inclusive, and paid the taxes for each year except 1898. But plaintiff paid the tax on all the land for 1903 on October 23, 1903, while defendant did not pay the tax on the tract separately assessed to him until November 23, 1903, and the tax for the year 1904 was paid by both parties on the same day, November 18, 1904. Whether the adverse occupant of land may have it assessed to himself while it is assessed also to the true owner, and may comply with section 325, Code of Civil Procedure, by paying this double or second tax, when for the same years the true owner also pays the tax, is a question not satisfactorily or clearly

settled by our supreme court.   In *Cavanaugh* v. *Jackson*, 99 Cal. 672, [43 Pac. 509], the main opinion seems to answer the question in the affirmative.   But in a concurring opinion, Mr. Justice Harrison, one of the three judges who pronounced judgment, dissented from the view of the majority and concurred only on the ground that the adverse occupant paid the tax before the true owner paid it.   When the reasoning of the dissenting opinion is considered, together with some statements in *Hayes* v. *County of Los Angeles*, 99 Cal. 74, [33 Pac. 766], and the decision in *Carpenter* v. *Lewis*, 119 Cal. 18, [50 Pac. 925], is also taken into consideration, it must be apparent that the soundness of the Cavanaugh decision is to some extent at least to be doubted.   However this may be, it seems quite clear to us that where the true owner pays the tax upon an assessment to himself before the adverse claimant pays the second or double tax he has caused to be assessed to himself, the latter cannot claim compliance with the statute.   This view makes it unnecessary to consider the other questions arising out of the facts connected with defendant's claim of adverse possession.   The prior payment of the tax by plaintiff for the year 1903, not to mention the payment by both parties on the same day for the year 1904, interrupted the running of the statute of limitations, and defendant had not completed the requisite adverse occupation when the action was commenced.

The order is affirmed.

Hart, J., and Burnett, J., concurred.