(No. 16348.—Decree affirmed.)
ANTON M. SCHMITT, Appellant, vs. JOHN KING et al.—
(JOSEPH KING, Appellee.)

*Opinion filed February 17, 1925—Rehearing denied April 11, 1925.*

1. LIMITATIONS—*when possessor fails to show title by payment of taxes for seven years.* One in possession of a tract of land the legal title to which is in another cannot establish title thereto by possession and payment of taxes for seven successive years under the Limitations act, where the evidence shows that the true owner was the first to pay the taxes on two occasions during the seven year period, as the subsequent payments of the taxes by the possessor are mere gratuities.

2. SAME—*what necessary to prove title by twenty years' possession.* To establish title by twenty years' possession the claimant must prove that he and his predecessors in title have been in the actual, visible, notorious, exclusive and continuous possession for that period under claim of ownership and that the possession was hostile or adverse in its origin.

3. SAME—*when erection of fence does not affect title.* Where a party claims title to a disputed strip by virtue of the Statute of Limitations, the fact that the record owner, who owned the adjoining land, erected a fence which excluded the disputed strip can not affect the record owner's title to the disputed land, as he has a right to fence any part of his land for any purpose without surrendering title to the land outside the fence.

4. SAME—*adverse possession is adverse to all the world.* The possession of one claiming the exclusive ownership of land is notice to all the world and not only to those who know or claim that they have title to the property.

5. SAME—*presumptions are in favor of the holder of legal title.* Adverse possession cannot be made out by inference or implication but all presumptions are in favor of the holder of the legal title, and the proof to establish title by adverse possession must be clear, positive and unequivocal.

APPEAL from the Circuit Court of McHenry county; the Hon. E. D. SHURTLEFF, Judge, presiding.

D. T. SMILEY, for appellant.

V. S. LUMLEY, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a decree of the circuit court of McHenry county denying the prayer of the bill of Anton M. Schmitt praying that the title to a triangular tract of land containing 9.49 acres, located in the northwest corner of the southeast quarter of the southeast quarter of section 13, township 45, north, range 8, east of the third principal meridian, in the county of McHenry, be quieted and held to be in him, and allowing the prayer of the cross-bill of Joseph King, appellee, and holding that he is the owner of said tract of land.

In 1845 there was issued by the United States government to Peter Sabel a patent conveying to him the "northwest quarter of the southeast fractional quarter and the southwest fraction of the southeast fractional quarter (west of Fox river) of section thirteen, in township forty-five north, of range eight east, in the district of lands subject to sale at Chicago, Illinois, containing seventy-five acres and sixty-seven hundredths of an acre, according to the official plat of the survey of the said lands returned to the general land office by the surveyor general." Sabel owned these lands until 1887, when he conveyed them by exactly the same description to Joseph King, grandfather of the present owner. After the death of King the lands were sold in a partition suit, the master in chancery conveying by the same description to John King, and in 1921 he sold them to his son Joseph, appellee. Title to the lands in the northeast quarter of the same quarter section came down from the United States government through John Mueller in a direct chain of conveyances. According to the original government survey this subdivision of land contained 36.45 acres, about three and one-half acres being cut off the southeast corner of the 40 by Fox river. In 1868 the assessor of the town of McHenry divided this subdivision of land into two lots and numbered the east lot 47 and the west 48.

According to the plat lot 47 contains 18.25 acres of land, and lot 48, which is slightly narrower and longer, contains 18.20 acres. In 1871 John Frett conveyed lot 48 to John Buchner, and nine years later the latter conveyed to Eva Meyers "lot forty-eight (48), northeast quarter of the southeast fractional quarter" of section 13. In 1909 Eva Meyers conveyed "lot forty-eight (48), in the southeast quarter" of section 13, to Stephen M. Schmitt, and five years later the latter conveyed the same lands to his son Anton, appellant. Because of the unusual description and survey of the lands conveyed to Sabel and because of the different descriptions given in the several deeds to lot 48 we deem it necessary to incorporate in this opinion the following plats of the southeast quarter of section 13:

Original Survey.                    Assessor's Plat.

It will be noted that due to the cutting of timber, cultivation of lands in the Fox river valley, and other causes, between the time of making the original survey and the assessor's plat the waters of Fox river receded from the lands north and west of it and thereby increased the land area of the southeast fractional quarter of section 13. In making his plat in 1868 the assessor omitted the line showing the southern boundary of the northeast quarter of the quarter section and divided that part of the quarter section

north and west of Fox river into three parts, indicating in the three subdivisions an acreage equal to that represented by the two patents issued by the United States government conveying the lands to Sabel and Mueller. Mueller, through whom appellant traces his title, never had title to any lands in the southeast quarter of the quarter section. The acreage indicated on the assessor's plat for lots 47 and 48 equals the acreage indicated in the government patent conveying to Mueller the fractional northeast quarter. Appellant does not claim to have the record title to the tract of land in question, but he does claim to have title by virtue of possession under sections 1 and 7 of the Limitations act. It is conceded by appellant that the patent to Sabel covers the triangular tract of land in question.

Shortly after Stephen M. Schmitt became the owner of lot 48 he learned that John King had the record title to the 9.49 acres of land lying north and west of Fox river, in the northwest corner of the southeast quarter of the quarter section here involved, and he then declared that he and his predecessors in title were the owners of said tract of land and extended his fence along the west side of the disputed tract to Fox river. This suit was brought by his son in December, 1922. There is no dispute in the evidence that the Schmitts have been in the actual, visible, exclusive and hostile possession of the tract of land for thirteen years immediately preceding the filing of the bill. The deed conveying the land to Stephen described it as lot 48 in the southeast quarter of section 13, and the only recorded plat showing lot 48 is the assessor's plat, which shows the lot to include the lands in dispute. The Schmitts, therefore, having color of title made in good faith to the vacant and unoccupied lands in question, are entitled to a decree quieting their title to the same if they have paid all taxes legally assessed against the said lands for seven successive years. The Schmitts have paid the taxes on all of lot 48 from 1910 to 1922, inclusive. According to the tax receipts

in the record, in 1914 Stephen M. Schmitt paid the taxes on 18.30 acres of land in section 13, described as lot 48, February 23, and February 16 John King paid the taxes on 75.67 acres of land in section 13, described as follows: "W. of river W. front ½ S. E. ¼." In 1917 Anton M. Schmitt paid the taxes on 18.30 acres of land in section 13, described as lot 48, February 22, and February 14 John King paid the taxes on 75.67 acres of land in section 13, described as follows: "W. creek W. fr. ½ S. E. ¼." If the lands on which John King paid the taxes for the years 1914 and 1917 include the lands in dispute, then the Schmitts have failed to show payment of taxes for these years, the subsequent payments made by them being mere gratuities. (*Clayton* v. *Feig,* 188 Ill. 603; *Morrison* v. *Kelly,* 22 id. 609.) The only tract of land in the southeast quarter of section 13 that, according to the original survey, contains 75.67 acres of land is the tract owned by the Kings. In the tax receipt for 1914 this tract is described as being west of the river, which is the same description made of a tract of land of the same acreage conveyed by the government to Sabel. There is also on the receipt this description: "W. front ½ S. E. ¼." Undoubtedly the writing which looks like the word "front" must have been intended as an abbreviation for the word "fractional," because the only land owned by the Kings in the southeast quarter was the west fractional one-half of the quarter and the triangular tract in the northwest corner of the southeast quarter of the same quarter section. The tax receipts issued to John King for the years 1912, 1913, 1915 and 1916 describe the tract containing 75.67 acres as "W. of river W. fr. ½ S. E. ¼." In the tax receipts for 1917, and for the five years intervening between that date and the date of filing the bill, the tract of land containing 75.67 acres in section 13 is described, "W. creek W. fr. ½ S. E. ¼." Undoubtedly the word "creek" refers to Fox river. While the triangular tract of land in dispute is not

in the west half of the S. E. ¼ of section 13, it has been described as being in the west half of the fractional S. E. ¼ of section 13 from the time the government conveyed it to Sabel down to date. We think it is clear that John King paid the taxes on the lands in dispute in 1914 and in 1917. This being true, the Schmitts have not paid the taxes on these lands for seven successive years, as required by section 7 of the Limitations act, and appellant is not entitled to a decree under that section adjudging him to be the legal owner of the tract of land.

In order to establish title by twenty years' possession appellant must prove that he and his predecessors in title have been in the actual, visible, notorious, exclusive and continuous possession of said lands under claim of ownership and that the possession was hostile or adverse in its origin. (*Jaster* v. *Spikings,* 312 Ill. 170; *Duck Island Hunting and Fishing Club* v. *Whitnah,* 306 id. 284; *Hayden* v. *McCloskey,* 161 id. 351; *Ambrose* v. *Raley,* 58 id. 506.) The evidence on this branch of the case shows that the lands in dispute, and much of the land along the bank of Fox river in the south end of the three tracts shown by the assessor's plat, were low and marshy and until recent years were submerged during the greater part of the year. Lots 47 and 48 were platted at or about the same time as the village of Johnsburg, which lies immediately north of them in the northeast quarter of section 13. Twenty-five or thirty years ago the inhabitants of this village dug a ditch down the west line of lot 48 to drain the surplus water from the lands in the village. This ditch was not opened to the river and it discharged the waters flowing through it into the marsh on the lands in question. These marshy lands along the river were open and unoccupied and were used as a commons by the people of Johnsburg for pasturing their milch cows. Some time after the ditch was dug the Kings tacked some smooth wire on the willows growing along the ditch and on posts which they drove into the

swamp, for the purpose of preventing the cattle from entering upon their lands in the west half of the quarter section. This fence extended into the river at a point some rods east of the point where the west line of lot 48, according to the assessor's plat, touches the river. The fact that the Kings by the erection of this fence separated the land in dispute from the main body of their land is of no importance. They had the right to run a fence anywhere they chose, as long as it was on their own land. If they wanted to leave a part of their unused land outside their fence, to be used in common with other unused lands, that was their business, but they did not by that act surrender their title to the adjoining land owners. The fact that the Kings did not know just where their lands lay or just what portion of these unused swamp lands along the bank of Fox river belonged to them is of no consequence. The possession of one claiming the exclusive ownership of land is adverse to all the world and not merely to those who know or claim that they have title to the property. (*Waterman Hall* v. *Waterman,* 220 Ill. 569.) The act of the assessor in including the disputed tract with the undisputed lands in lot 48 is not binding upon appellee and does not of itself give title to the disputed tract to the owner of lot 48. Adverse possession cannot be made out by inference or implication. All the presumptions are in favor of the holder of the legal title, and the proof to establish title by adverse possession must be clear, positive and unequivocal. (*Wilkinson* v. *Watts,* 309 Ill. 607; *Zirngibl* v. *Calumet Dock Co.* 157 id. 430.) The evidence produced by appellant does not meet this test and the chancellor properly denied the relief asked by him. There being no other challenge to the record title of appellee the chancellor was right in confirming title to the disputed tract in him.

The decree of the circuit court is affirmed.

*Decree affirmed.*