464 P.2d 899

**C & F REALTY CORPORATION, a corporation, Plaintiff-Appellee,**

v.

**John J. MERSHON and Bernie Bounds, Defendants-Appellants.**

**No. 8784.**

Supreme Court of New Mexico.

Nov. 10, 1969.

Rehearing Denied Feb. 20, 1970.

Fettinger, Bloom & Overstreet, Alamogordo, Bigbee & Byrd, Santa Fe, for defendants-appellants.

John J. Wilkinson, Alamogordo, William T. Deffebach, El Paso, Tex., for plaintiff-appellee.

OPINION

WATSON, Justice.

This appeal results from a controversy over a portion of an abandoned railroad right-of-way in Cloudcroft, New Mexico. Appellants, the Mershons and the Bounds,

the owners of that portion of the right-of-way lying west of the center line, are in dispute with appellee, C & F Realty Corporation, over the half lying east of the center line. The Cloudcroft Company first granted the right-of-way easement to the railroad and then conveyed to appellee's predecessor in title a tract described as being "All of that part of Lot 17 of Said Section 6, which lies East of the East line of the right-of-way. * * * " Less than two years later the Cloudcroft Company conveyed the remaining property to appellants' predecessor in title by a deed which they claim included the entire right-of-way. Some years later the railroad abandoned the right-of-way.

C & F Realty brought this action on July 7, 1965, for possession and damages alleging that the defendants had cut its fence. Defendant Henderson answered, admitting he had leased from the other defendants a portion of the property. The other defendants, appellants herein, counterclaimed, stating that they had been entitled to possession of the premises since 1957.

· Although appellee claimed title by virtue of its deed, it also claimed title by adverse possession. The trial court held that appellee had title by its deed, or, in the alternative, by adverse possession. In their appeal here appellants contend that the trial court erred in both holdings.

Appellee received its deed from its immediate predecessor in title, Carter and Fuentes, in 1954. Carter and Fuentes received their deed from Cloudcroft Lodge, Inc. on August 15, 1953. The description in this 1953 deed undisputedly included the tract in question, as did the deed to the appellee. Appellants concede that the 1953 deed is "color of title." If, therefore, the trial court was correct in its ruling that appellee acquired its rights by adverse possession we need not consider the respective titles obtained by virtue of the respective conveyances other than to assume that, on the issue of adverse posses-

sion, appellants are the owners. Weldon v. Heron, 78 N.M. 427, 432 P.2d 392 (1967).

On the question of adverse possession, the trial court found that appellee's predecessor's deed of August 15, 1953 was color of title and that appellee and its immediate predecessor had paid all taxes due on the tract each year since 1953, and that appellee's agents had placed "No Trespassing" signs on the property and had cleared away brush. The court also found that immediately upon purchase of the property in 1954 appellee had walked, surveyed, and cleared the brush from the boundary line, had repaired and straightened the existing fence along the westerly boundary, had directed the placing of a chain and lock across one access road to the tract, and had given permission to the Cloudcroft Lodge Golf Course to use two other roads across the tract. The court found that appellee had removed "For Sale" signs put on the property by appellants, and, upon learning of a lease of part of the tract made by appellants to Lester Henderson, had ordered the premises vacated and, upon his refusal, had brought this action. The court found that these acts were of such a character as would reasonably be expected to inform other claimants of its possession and adverse claim. There is clear and convincing evidence to support these findings and, therefore, we cannot disturb them. Marquez v. Padilla, 77 N.M. 620, 426 P.2d 593 (1967).

Appellants proved that although appellee had paid the taxes on the property during the ten preceding years, they had also paid them, and that for all years except 1956, 1960, 1961, and 1962 they had in fact paid the taxes first, although during the years 1957, 1958, and 1959 appellees paid the second half of the taxes first. Appellants contend that when they paid the taxes first there were no taxes for appellee to pay and its purported payment would not be in compliance with the requirement of the adverse possession statute which requires the payment of all taxes by the claimant. Section 23–1–22, N.M.S.A. 1953 Comp. There

is no claim that either party had actual notice of the other's claim of ownership or payment of taxes until shortly before this action was brought, although both parties claim that their actions constituted notice of their respective claims.

We held in McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000 (1949), that the redemption of property from a tax sale was not payment of taxes as required by the adverse possession or limitation statute (§ 23–1–22, supra). So far as we know, the question presented here as to whether prior payment of taxes by the owner would deprive the claimant of his ability to comply with the statute has not been previously before this court. There is a division of authority on the question. Annot. 132 A.L.R. 216. Appellants rely upon Rio Grande Western Ry. Co. v. Salt Lake Invest. Co., 35 Utah 528, 101 P. 586 (1909); Schmitt v. King, 316 Ill. 239, 147 N.E. 101 (1925); and Commercial Nat. Bank v. Schlitz, 6 Cal.App. 174, 91 P. 750 (1907) which hold that once the taxes have been paid the second attempted payment is simply a voluntary contribution and not payment. Appellants also cite McCastlain v. Wylie, 139 Ark. 326, 213 S.W. 743 (1919), and Glowner v. De Alvarez, 10 Cal.App. 194, 101 P. 432 (1909), which deal with the question of requiring the county treasurer to receive tendered payment, a matter not in issue here.

In opposition to the so-called priority payment rule appellees refer us to Cavanaugh v. Jackson, 99 Cal. 672, 34 P. 509 (1893), and Thomson v. Weisman, 98 Tex. 170, 82 S.W. 503 (1904). In addition, we note that the rule has been rejected by the Supreme Court of California and the Supreme Court of Arizona in Owsley v. Matson, 156 Cal. 401, 104 P. 983 (1909), and Nicholas v. Giles, 102 Ariz. 130, 426 P.2d 398 (1967).

In United States v. Wooten, 40 F.2d 882 (10th Cir. 1930), the court in construing the requirement for payment of taxes by an adverse claimant under the Pueblo Lands Act had occasion to consider the legislative purpose of the adverse possession requirement of the Act. Subsection (a) of § 4 of that Act (43 Stat. 636, 25 U.S.C.A. § 331) provides that the adverse claimants must prove that they "have paid the taxes assessed and levied thereon to the extent required by the statutes of limitation or adverse possession of the Territory or of the State of New Mexico * * *." We quote from Judge McDermott's opinion in Wooten, supra:

"We agree with counsel for the government that 'Congress evidently made tax payments a portion of the test, because the full and regular payment of taxes is the best evidence of a genuine and continuous claim of title in good faith.' "

■ We believe such was also the intent of the New Mexico legislature in requiring the payment of taxes. Here both parties, apparently without knowledge of the double assessment or of the other's claim, paid the taxes in good faith. The fact that one may have paid all or a portion of the respective assessment prior to payment by the other would be no indication of an inconsistency on the part of either of their claims of ownership in good faith. For this reason we hold that appellee did comply with the requirement of the statute (§ 23–1–22, supra) in the payment of its taxes.

Appellants contend that as record owners their use of a portion of their complete tract gave them constructive possession of the portion here in contest which lies within its boundaries. Jenkins v. Maxwell Land Grant Company, 15 N.M. 281, 107 P. 739 (1910), aff'd. 235 U.S. 691, 35 S.Ct. 205, 59 L.Ed. 427 (1914). In addition appellants introduced evidence of actions of possession on the part of themselves and their predecessors which would tend to show appellee's possession was not exclusive. The trial court refused their requested findings on both of these points and concluded that appellee had established open, notorious, hostile, continuous, exclusive possession for 10 years in good faith under color of title and payment of taxes as required by § 23–1–22, supra, and that no suit

**172**

had been prosecuted against it or its predecessor.

We have reviewed those portions of the record to which appellants have referred us in order to determine what evidence of possession on the part of the appellants is sufficient to prevent appellee's evidence of exclusive possession from being clear and convincing. We find that from 1953 to 1965, although acts of possession were rather extensive on its adjoining tract, the only acts of actual possession on the tract in dispute by appellants and their predecessors in title were the placing of three "For Sale" signs on the property (which were later torn down by appellee) and the leasing of a portion of the tract to Henderson in 1965, which occasioned this suit. The sufficiency of the evidence to support the court's finding of exclusive possession in appellee must be viewed most favorably in favor of upholding it. Village of Cloudcroft v. Pittman, 63 N.M. 168, 315 P.2d 517 (1957). The placing of the "For Sale" signs did not prevent the evidence of appellee's possession from being clear and convincing as to its exclusiveness. In addition, after considering the nature and usefulness of the tract (See Lopez v. Barboa, 80 N.M. 338, 455 P.2d 842 [1969] ), we cannot conclude that the trial court erred in finding that appellee's actual possession under color of title overcame the constructive possession of the appellants. Montoya v. Unknown Heirs of Vigil, 16 N.M. 349, 120 P. 676 (1911).

Appellants contend that the tract was a buffer zone for the Cloudcroft Lodge Golf Course; that they had acquiesced in the use of the land by the Cloudcroft Lodge, Inc., which managed the golf course; and that it was the employees of the Lodge who put up the "No Trespassing" signs, opened and maintained the access roads to the golf course, and maintained the fence, and that not until 1963 were they aware of any interest claimed by appellee. Further, if the employees of the Lodge were also appellee's agents, as found by the trial court, this was a hidden agency which would not make appellants aware of a hostile claim made in good faith.

Certainly the hostile acts must be of a nature to put the owner on notice. Prince v. Charles Ilfeld Co., 72 N.M. 351, 383 P.2d 827 (1963). Appellants admit that they did not raise the issue of good faith in either the trial court or here. As we stated above, we believe the evidence was sufficient for the trial court's finding that appellee's acts were of such a character as would reasonably be expected to inform others of its claim. Baker v. Armijo, 17 N.M. 383, 128 P. 73 (1912). If appellants thought that these acts were performed by the Lodge with their permission rather than by the appellee, does this prevent the running of the statute in favor of appellee? We think not. The hostile character of possession depends upon the occupant's own views and intentions, not upon those of his adversary. Pinkert v. Polk, 220 Ark. 232, 247 S.W.2d 19 (1952). It also depends upon the relationship of the parties and the nature of their holdings. Prince v. Charles Ilfeld Co., supra; Frietze v. Frietze, 78 N.M. 676, 437 P.2d 137 (1968); but see Thurmond v. Espalin, 50 N.M. 109, 171 P.2d 325 (1946). Here the parties were strangers in title. Neither title was subordinate to the other. The acts of hostile possession were there; the failure to recognize them as such was the fault of appellants, not appellee.

Having concluded that appellee's title and right to possession of the tract was established by adverse possession, we affirm the judgment of the trial court.

It is so ordered.

WILLIAM R. HENDLEY, J., Ct.App., JAMES W. MUSGROVE, J., D.C., concur.