[S. F. No. 550.   Department One.—November 3, 1897.]

## ELIZABETH W. CARPENTER, Respondent, v. OSCAR LEWIS et al., Appellants.

MORTGAGE—DECREE OF FORECLOSURE—EXECUTION SALE OF DECREE INVALID.
A judgment and decree foreclosing a mortgage cannot be levied upon and sold under execution, and an execution sale thereof is invalid and ineffectual to transfer such judgment and decree to the purchaser, who takes nothing thereby.

ID.—MORTGAGE BY DEED ABSOLUTE—IMPROPER RECORD OF DEFEASANCE—PROTECTION OF BONA FIDE PURCHASER.—Where a mortgage was made by deed absolute upon its face, and a defeasance executed by the grantee was not acknowledged by the grantee, but was merely acknowledged and recorded by the grantor, a bona fide purchaser from the mortgagee for value, without actual notice of the defeasance, or of the fact that the deed was intended as a mortgage, is protected under the provisions of sections 2925 and 2950 of the Civil Code, and became the real owner of the lot.

ID.—ENTRY OF DECREE OF FORECLOSURE—ABSENCE OF NOTICE OF LIS PENDENS—CONSTRUCTIVE NOTICE.—The pendency of an action for the foreclosure of a mortgage by deed absolute is not constructive notice to a *bona fide* purchaser from the mortgagee, where no notice of *lis pendens* appears of record; nor is such purchaser bound to take constructive notice of the mere entry of a decree of foreclosure in such action where there is no sale or docketing of the judgment therein.

ADVERSE POSSESSION—PAYMENT OF TAXES BY LEGAL OWNER—REPAYMENT BY OCCUPANT.—Where the taxes upon a lot were assessed to and paid by the legal owner of the lot, the lien thereof was gone, and any subsequent repayment of such taxes in any year by an occupant of the lot could not serve to ground or maintain an adverse possession by such occupant under section 325 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   D. J. Murphy, Judge.

The facts are stated in the opinion.

William H. Fifield, for Appellants.

Moses G. Cobb, for Respondent.

BELCHER, C.—This is an action of ejectment to recover possession of a lot of land situated at the southeast corner of Sacramento and Steiner streets, in the city of San Francisco. The complaint is in the usual form, alleging plaintiff's ownership of the lot in fee and her ouster therefrom by defendants.   The an-

swer denies the allegations of the complaint and alleges that at all the times mentioned in the complaint the defendant, George W. Osborne, was, and still is, the owner in fee, in possession and entitled to the possession of the said lot, and further pleads in bar of the action the statute of limitations.

The case was tried by the court without a jury, and the findings upon all the issues raised by the pleadings were in favor of the plaintiff and against the defendants. Judgment was accordingly entered that plaintiff recover possession of the lot, with damages for its use and occupation, and costs of suit; and from that judgment defendants have appealed on the judgment-roll.

The findings are in substance as follows: P. H. Blake was the owner of the lot in controversy, and in April, 1870, conveyed the same to William B. Latham, Jr., by a deed absolute in form, but intended as a mortgage. The deed was dated April 5th, acknowledged April 6th, and duly recorded April 7, 1870. At the time the deed was given Latham executed to Blake a defeasance, which was acknowledged by Blake alone May 7, 1883, and on the same day recorded in a book of miscellaneous records in the office of the city and county recorder. At some time, when not stated, Latham commenced an action in the district court of the twenty-third judicial district to foreclose the mortgage created by said deed and defeasance, and on December 31, 1879, obtained a decree foreclosing Blake's right of redemption under said deed and defeasance, and ordering a sale of said lot of land, with other lots, in foreclosure. Thereafter for a valuable consideration Latham executed to the plaintiff a deed of the said lot, which was dated February 14, 1880, acknowledged April 2, 1880, and duly recorded October 6, 1881. At the time of the delivery to and receipt of said deed by the plaintiff, she had no actual notice of the existence of said defeasance, or that the said deed from Blake to Latham was in fact a mortgage as between the parties thereto. On May 6, 1881, while the said decree of foreclosure remained unexecuted, one Page recovered against Latham in the superior court of San Francisco a money judgment for the sum of $5,544.84, and $195.25 costs of suit. On this judgment an execution was issued, and thereunder, on October 6, 1881, the lot in question was sold by the sheriff to the plaintiff herein for the sum of $520, and on December 19, 1888, no redemption of said

lot from said sale having been made, the sheriff executed to the plaintiff a deed of "all the estate, right, title, and interest which William B. Latham, Jr., had on the sixth day of May, 1881, or at any time afterward" in said lot of land, which deed was acknowledged and afterward duly recorded. At this same execution sale other lands of Latham were sold, and the aggregate amount realized from the sale was $5,200, which was applied in satisfaction of the said judgment, leaving a balance due thereon of $219. On March 8, 1882, an *alias* execution was issued for the balance of $219 due on the said judgment, and on the next day was levied upon the judgment and decree of foreclosure in the suit of *Latham v. Blake.* Thereafter, on the 15th of the same month, the said judgment and decree was sold by the sheriff, under said *alias* writ, to the defendant, G. W. Osborne, for the sum of $603.05, and on the next day a certificate of sale for the same was issued to him. On May 25, 1882, said Osborne, claiming to have succeeded to the interest of Latham in the said judgment and decree, procured an order of sale to be issued on the decree, and under it caused the sheriff, after the usual notice, to sell the lots mentioned in the decree, including the lot in controversy here, of which he became the purchaser. On December 28, 1882, no redemption having been made, the sheriff executed and delivered to Osborne a deed of all the right, title, and interest of the judgment debtor, Blake, in the said lot, and which he had therein on the 5th of April, 1870. Upon receipt of this deed Osborne entered into possession of the said lot, fenced the same, and by himself and tenants had held such possession ever since, claiming title to the lot under said deed. On October 13, 1884, Latham assigned his interest in the said judgment and decree of foreclosure to one Rowe, and thereupon Rowe applied to the court for an order requiring the clerk of the court to issue an order of sale upon the judgment and decree in his behalf, as assignee, notwithstanding the order of sale issued thereon to Osborne, as before stated. The order so applied for was granted; and from that order Osborne appealed to the supreme court (*Latham v. Blake,* 77 Cal. 646), where it was adjudged and determined that the purchase by Osborne of said judgment and decree, under the said execution sale, was of no effect, and such sale was ineffectual to transfer said judgment and decree to Osborne and

he took nothing thereby, wherefore the order appealed from was affirmed. This action was commenced in November, 1891, and during each of the five years next preceding its commencement all taxes levied upon the said lot were assessed to the plaintiff only, and were fully paid and discharged by her. Osborne also paid the said taxes, but, except in the years 1889 and 1890, he paid them after they had been paid by plaintiff.

Upon these facts the court found that at the time of the commencement of the action the plaintiff was, and still is, the owner in fee of the said lot, and entitled to the possession thereof, and her cause of action was not barred by the provisions of any of the sections of the Code of Civil Procedure pleaded in bar thereof.

On this appeal the only question to be decided is, Do the findings justify and support the judgment?

1. Section 2925 of the Civil Code provides: "The fact that a transfer was made subject to defeasance on a condition may, for the purpose of showing such transfer to be a mortgage, be proved (except as against a subsequent purchaser or incumbrancer for value and without notice), though the fact does not appear by the terms of the instrument."

And section 2950 of the same code provides: "When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees, or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the county recorder of the county where the property is situated."

Under these sections, if the plaintiff purchased the lot in controversy from Latham for value, and without notice that the deed to him was intended as a mortgage, she took a good title and became the real owner of the lot. See *Pico v. Gallardo*, 52 Cal. 206, where it was held that if land is conveyed by a deed absolute in form, as security for the payment of money loaned, a purchaser from the grantee, without notice that the grant was intended as a mortgage, acquires a title free from the equity of the grantor.

That plaintiff paid a valuable consideration for the lot, and that the defeasance was not then recorded is not denied. The court found that she had no "actual notice," but appellants contend that she must be deemed to have had constructive notice, because the decree of foreclosure was entered before her deed was executed.

No *lis pendens* was filed, and "the mere pendency of a suit does not, as at common law, charge the subsequent purchaser. A notice of *lis pendens* must appear of record." (*Warnock v. Harlow*, 96 Cal. 304; 31 Am. St. Rep. 209.) The code makes a docketed money judgment a lien upon all the real property of the judgment debtor not exempt from execution in the county (Code Civ. Proc., sec. 671), but in foreclosure cases the docketing of a deficiency judgment only creates a lien. (Code Civ. Proc., sec. 726.) Where the statute provides that the judgment shall create and establish a lien on the real property of the judgment debtor, there undoubtedly the judgment imparts notice of such lien; but we know of no statute which in effect declares that an unexecuted decree of foreclosure will operate to impart notice to those dealing with the plaintiff in the action as to the nature and extent of his interest in the land foreclosed upon. We conclude, therefore, that the plaintiff did not, when her deed was executed, have constructive notice that the deed to Latham, her grantor, was in fact only a mortgage. The cases cited by appellants, when properly considered, do not sustain their contention and need not be specially noticed.

2. Appellants further contend that prior to the commencement of this action defendant Osborne had acquired title to the said lot by adverse possession, and that the court erred in finding that the plaintiff's cause of action was not barred by the statute of limitations.

Since 1878 every claim of title to real property by adverse possession has been subject to the provision expressed in section 325 of the Code of Civil Procedure, "that in no case shall adverse possession be considered established under the provision of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and

grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land."

It appears that during the five years next preceding the commencement of the action the said lot was assessed to the plaintiff alone, and she paid in full all the taxes levied and assessed thereon. It is true Osborne also paid the taxes, but, except in two of the said years, he paid them after they had been paid by her.

In *Hayes v. County of Los Angeles*, 99 Cal. 74, it is said on page 78: "When the taxes upon property have for a given fiscal year been once paid by the owner, the county has no right or power to sell or in any manner affect or encumber the land by a sale thereof. The lien of the tax is gone." And in *Cavanaugh v. Jackson*, 99 Cal. 672, it is said by Mr. Justice Harrison, in his concurring opinion: "When the taxes upon a parcel of land have been once paid the burden is removed, and there no longer remains any tax to be paid. Such payment may be made by any person claiming an interest in the land, and the effect of such payment will be to discharge the land from the burden of the tax, and, as there is thereafter no obligation upon anyone to pay the tax, no right can be acquired by making a payment of the amount of the tax to the tax collector." And again: "If, when he [the adverse claimant] offers to make a payment to the tax collector, the tax which has been levied has been already paid, he cannot comply with one of the requirements of the statute and must fail to acquire a title by adverse possession."

In that case, it appeared that the land in controversy had been occupied by the adverse claimant for six years and assessed to him each of those years, and that all taxes levied thereon were paid by him. It was also assessed to the owner for three of the said years, and the taxes levied thereon were paid by said owner. But it did not appear which of the parties paid first. The court below gave judgment in favor of the adverse claimant, and on appeal the judgment was affirmed.

That case is clearly distinguishable from this, for here the lot in controversy was never assessed to Osborne, and the tax collector had no right to accept the taxes from him after they had been fully paid by the plaintiff. As applied to the facts of this case, we think the language of Mr. Justice Harrison, above quoted, states the law correctly and should be followed.

If this be not so, then the owner of property might be deprived of it without any fault on his part and by the wrongful act of another. For example, suppose A were the owner of a lot of land, which he did not wish to improve or occupy, but was waiting till he could sell it for a better price. He had the property assessed to himself every year, and regularly paid all the taxes levied thereon. B, seeing the lot vacant, took possession of it, fenced it in, and used it for pasturing his cows or goats, without any objection on A's part, for the period of five years. The lot was never assessed to B, but each year, after the taxes thereon had been fully paid and discharged by A, he went to the tax collector and again offered to pay them, and that officer accepted such payments. Can it be true that, under such circumstances, B, when called upon to leave the lot, could successfully assert that he had paid all the taxes levied and assessed upon the lot for five years, and had acquired title thereto under the statute of limitations? We think not.

It must be held, therefore, that Osborne had not acquired title to the said lot by adverse possession.

3. It is objected that some of the findings are inconsistent with and contradictory of others, but we see no good ground for this complaint. The findings, when read together, seem fairly to cover the whole case and to justify and support the judgment.

The judgment should be affirmed.

Searls, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.                    Harrison, J., Van Fleet, J.

Garoutte, J., concurred in the judgment.

Hearing in Bank denied.