POSTAL TEL. CABLE CO. v. SOUTHERN RY. CO.

(Circuit Court, W. D. North Carolina.    October 17, 1898.)

EMINENT DOMAIN—TELEGRAPHS—PROCEDURE—CONSTRUCTION OF STATUTE.
    In Code N. C. § 2010, relating to the condemnation of right of way for telegraph lines, and containing the proviso that, "if the right claimed be over or upon an easement or right of way which extends into or through

more counties than one, the whole right and controversy may be heard and determined in one county, into or through which such easement or right of way extends," the words "right of way" are not used as synonymous with "easement," but, as applied to railroads, they include in their meaning the strip of land over which the track is laid through the country, and which is used in connection therewith, whether the railroad company owns only an easement therein or the title in fee.

## On Demurrer to Answer.

J. R. McIntosh and A. L. Brooks, for plaintiff.
Stiles & Holladay, for defendant.

SIMONTON, Circuit Judge. The defendant, at the hearing of this case on petition at Asheville, interposed a demurrer to dismiss the complaint, because the facts stated therein disclosed no cause of action. The demurrer was overruled, and an order was made providing for the appointment of commissioners. At a later date, defendant came in, and asked leave to answer, and to this end the order be vacated. The order passed upon overruling the demurrer was based on a construction of the Code of North Carolina of 1883, which left in the discretion of the court the privilege of answering over. This, however, is not in accordance with the law of North Carolina. "After the decision of a demurrer, the judge shall, if it shall appear that the demurrer was interposed in good faith, allow the party to plead over upon such terms as may be just." Code, § 272. There can be no doubt as to the good faith of the demurrer. This section has been construed to give the defendant the right to answer over upon overruling the demurrer. Moore v. Hobbs, 77 N. C. 65; Bronson v. Insurance Co., 85 N. C. 411. In this last case it was held that it was not proper to interpose the condition that the costs be paid. In Morris v. Gentry, 89 N. C. 249, this right to answer over was sustained even after demurrer overruled in the supreme court. The order for the commissioners is vacated, and leave is given to defendant to answer over.

Exercising this right, the defendant has answered. The answer, after setting up very many grounds of defense heretofore passed upon, and therefore now overruled, adds another. It avers that very many sections of the land over which the road runs, and which the petitioner seeks to condemn, are owned in fee simple by the defendant; that thus the petitioner does not seek to condemn a right of way upon an easement only, but it also seeks to condemn the land of defendant. This being so, condemnation proceedings must be had in the county in which the land lies (Code, § 1944); the provision of the Code which authorizes proceedings in one county only applying only to the condemnation of an easement.

The language to be construed is in section 2010 of the Code, and in the proviso. It is in these words:

"Provided that only the interest of such parties as are brought before the court shall be condemned in any such proceedings, and if the right claimed be over or upon an easement or right of way which extends into or through more counties than one, the whole right and controversy may be heard and determined in one county, into or through which such easement or right of way extends."

The petitioner demurs to the answer, and the question of construction must be met. What is meant by the words "easement or right of way"? Are the words "right of way" synonymous with the alternative of the term "easement," or do they mean two different things? Technically and strictly, a "way" is the passage over the lands of another; "right of way" is the right to use this passage. Williams v. Railway Co., 50 Wis. 71, 5 N. W. 482; 21 Am. & Eng. Enc. Law, 405. The position taken by the defendant is very nice and ingenious. It does not create conviction of its soundness; yet it is most difficult to answer. Popularly speaking, the right of way of a railroad company —that which is understood when the term is used—is the track, and that part of land on each side of it, used and possessed for the purpose of passing through the country from one point to another. Anderson, in his Law Dictionary, says:

"By right of way is generally meant a private way, which is an incorporeal hereditament of that class of easements in which a particular person, or description of persons, has an interest and a right, though another person is the owner of the fee in the land in which it is claimed; * * * the privilege which one person, or description of persons, may have of passing over the land of another in some particular line. Referring to a railway, a right of way is a mere easement in the lands of others, obtained by lawful condemnation to the public use or by purchase. It is a way over which the company has to pass in the operation of its trains. The term includes land acquired for necessary side tracks and turnouts, and the improvements thereon. It sometimes refers to the mere intangible right of crossing; often, to the strip which the company 'appropriates for its use, and upon which it builds its roadbed.'" Keener v. Railway Co., 31 Fed. 128.

There is another view of this question. The rule in the construction of statutes is to give to every word force and effect. Applying this rule here, we would not, unless forced to do so, conclude that these words mean the same thing,—convey the same idea. The word "easement" would have fully conveyed the idea of an incorporeal hereditament, as distinguished from the fee in the land; and the use of the words "or right of way" would not only be tautological, but confusing. The Code itself uses these words in such a way as to induce the conclusion that they do not convey the same idea. In section 150 it says:

"No railroad, plank road, turnpike or canal company shall be barred of or presumed to have conveyed any real estate, right of way, easement, leasehold or other interest in the soil which may have been condemned or otherwise obtained for its use as a right of way, depot, station house or place of landing by any statute of limitation or by occupation of the same by any person whatever."

So, in this section 2009 of the Code:

"Such telegraph company shall be entitled to the right of way over the lands, privileges and easements of other corporations."

And this section, 2010, uses similar language.

Indeed, it may be questioned if a railroad company organized as a corporation for the specific purpose of running and operating a railroad can have in its right of way any other title except for these purposes, and so long only as they are preserved. 1 Redf. R. R. p. 218, c. 10, § 61. If this be so, the whole right of way is but an easement. There is yet another view. There can be no doubt that, the right

of eminent domain being a high and at times harsh exercise of the sovereign power, the form of proceeding prescribed by statute must be strictly pursued.    The necessity for and the right to its exercise must exist and be shown, and the mode of its exercise must be rigidly followed.    At the same time, when it is given for the promotion of a great public benefit, in its use of the gift the corporation should not be harassed and hindered by narrow and technical construction of the words of the statute; nor should such a construction be adopted as will make the gift wholly impracticable and valueless.    If this plaintiff be compelled to go into every county through which the railway company has built its way, and there seek the relief it seeks here, its interests will be put into the hands of very many boards of commissioners, whose conclusions would be naturally conflicting, perhaps contradictory.    The enterprise of a telegraph company—now one of the necessities of the commercial world—will be delayed, hampered, perhaps defeated.    The demurrer to the answer is sustained.