THE RIO GRANDE WESTERN RAILWAY COM-
PANY, Appellant, v. SALT LAKE INVESTMENT
COMPANY, Respondent.

No. 2007.   Decided April 14, 1909 (101 Pac. 586).

1. EXECUTORS AND ADMINISTRATORS SALE—RIGHTS OF PURCHASERS—
   AS AGAINST GRANTEE. Where land conveyed by the owner's wid-
   ow and children was afterwards sold to pay decedent's debts,
   the purchaser at the sale took title as against the grantee of
   the widow and children.   (Page 534.)

2. DEEDS—RESERVATIONS—IDENTIFICATION.   Where a particular part
   of land conveyed is reserved in general terms, the physical con-
   ditions must be considered, and where land is sold subject to
   an existing right of way or other interest, which is marked
   on the ground, such marking is ordinarily sufficient to identify
   the part reserved.[1]   (Page 535.)

3. EXECUTORS AND ADMINISTRATORS—CONVEYANCE OF LAND—EXCEP-
   TIONS—CONSTRUCTION.   Where, after the widow and children of
   a decedent conveyed to plaintiff railroad company land de-
   scribed by metes and bounds, excepting a strip which the
   grantee had previously purchased and used as a right of way,
   the widow, as administratrix, sold land including such part
   conveyed, but excepting "such portions as were theretofore ta-
   ken by the railroad as a right of way."   The part actually used
   by the railroad company as a right of way was distinctly fenced
   off from the part subsequently purchased by it.   The railroad
   company, in listing the land for taxation, always treated the
   part subsequently purchased as separate from its right of way.
   Held, that the land excepted from the administratrix's deed
   included only the fenced right of way, and which was used by
   the railroad as such, and not the part conveyed to the com-
   pany by the widow and heirs.   (Page 535.)

4. RAILROADS—"RIGHT OF WAY"—DEFINITION.   The term "right of
   way" ordinarily means a strip occupied by a railroad company
   for its tracks, and lands directly connected therewith, though
   it may not be of the same width, or used in the same manner,
   at all points.   (Page 536.)

---

[1] Rushton v. Hallett, 8 Utah 277, 30 Pac. 1014.

5 ADVERSE POSSESSION—STATUTORY PROVISIONS—APPLICABILITY. An owner who had not acquired title by adverse possession prior to the enactment of Comp. Laws 1907, section 2866 (Comp. Laws 1888, section 3137), prescribing the requisites of title by adverse possession, could not thereafter acquire title by adverse possession except pursuant to the provisions of the statute. (Page 538.)

6. TAXATION—ASSESSMENT—AUTHORITY TO MAKE—RAILROAD PROPERTY. The State Board of Equalization has no authority to assess a part of a lot claimed, but not owned by a railroad company, which was distinct from its right of way, and listed by it merely as a part of the lot; authority to assess it being in the local assessor. (Page 539.)

7. TAXATION—ASSESSMENT—PROPERTY ASSESSED. The assessment of a lot as a whole includes a parcel forming a part of it. (Page 539.)

8. ADVERSE POSSESSION—REQUISITES—PAYMENT OF TAXES. Where a part of a lot was not owned by a railroad company and was not a part of its right of way, and was assessed merely as a part of the lot distinct from the assessment of its right of way, so that the State Board of Equalization had no authority to assess it, and the lot, except that part occupied by it as a right of way, was assessed generally to the owners thereof by the local assessor for the whole period for which it was assessed to the railroad company by the Board of Equalization, the railroad company did not pay the taxes thereon so as to entitle it to claim the lot by adverse possession under Comp. Laws 1907, section 2866 (Comp. Laws 1888, section 3137), requiring the claimant to have paid all the taxes levied and assessed on the land according to law during the seven year period, in order to claim by adverse possession. (Page 539.)

9. EASEMENTS—ACQUISITION BY PRESCRIPTION. An easement in land may be acquired by a continuous use for twenty years. (Page 541.)

10. COMMON LAW—REPEAL. Comp. Laws 1907, section 2498, making the Revised Statutes the law of the state respecting the subjects to which they relate, by implication at least, excludes the common law from all subjects that are regulated by statute. (Page 541.)

11. ADVERSE POSSESSION—TITLE BY PRESCRIPTION—STATUTORY PROVISIONS. Adverse possession can be acquired in no other manner than that prescribed by Comp. Laws 1907, section 2866, so that title to land cannot be acquired by prescription as at common law. (Page 541.)

35 Utah—34

APPEAL from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by the Rio Grande Western Railway Company against the Salt Lake Investment Company. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Van Cott, Allison & Riter* for appellant.

*C. S. Patterson* for respondent.

FRICK, J.

Appellant, a Utah corporation, brought this action to quiet the title to the following parcel of land, of which it claimed to be the owner in fee, namely: "Beginning at the southeast corner of lot 8, block 107, plat 'C,' Salt Lake City survey, and running thence north 330 feet to the northeast corner of said lot 8, thence west 204 feet, thence in a southeasterly direction parallel to and 33 feet distant from the center line of plaintiff's railroad track as now constructed thereon, 345½ feet to the south boundary of said lot 8, thence east 104 feet to the place of beginning." The land above described contains the major portion of lot 8, in block 107, of the original plat of Salt Lake City. A strip four rods in width off the westerly side of the parcel above described extending in a southeasterly and northwesterly direction ever since 1883 has been, and now is, used by appellant, as a right of way upon which is located its railroad track and telegraph poles. West of this four-rod strip, and in the southwest corner of lot 8, there also remained a triangular piece of land which is a part of lot 8. The respondent, in its answer, disclaimed all right, title, or interest in this four-rod strip, but claimed title to all of the parcel above described not included within said strip, and asked that the title thereto be quieted in it. The question, therefore, is, which one of the parties is the owner of the parcel in controversy?

This parcel is triangular in form, and is, substantially, 330 feet long on the east boundary, 135 feet in width on the north boundary, 345 feet in length on the west boundary, and 35 feet in width on the south. All of lot 8 is part of the southeast quarter of section 26, township 1, range 1 west, in Salt Lake county. Appellant claimed a paper title as follows: The southeast quarter aforesaid was, on July 15, 1870, duly conveyed by United States patent to one Phillip Pugsley. On January 24, 1873, said Phillip Pugsley and wife duly conveyed all of lots 4, 5, 6, 7, and 8, block 107, plat "C," to one Dimick B. Huntington. After this, on October 2, 1884, Fanny M. Huntington, widow of Dimick B. Huntington, Clara A. Huntington, and Julia C. Hancock, nee Huntington, two of the children of herself and Dimick B. Huntington, conveyed to the Denver & Rio Grande Western Railway Company, of which appellant is successor, the parcel of land as above described. We remark here that Dimick B. Huntington, died in 1878, leaving him surviving a widow and three children, all of whom, it appears were of lawful age at the time of his death. The widow and two of the children only joined in the conveyance last above referred to. It also appears in the record that on August 5, 1882, Phillip Pugsley and wife conveyed to the Denver & Rio Grande Western Railway Company a strip of ground four rods in width through the entire southeast quarter of the section, township, and range aforesaid, and that the railroad track was constructed on this strip and is now located thereon. It was also admitted that the appellant is the successor of the Denver & Rio Grande Western Railway Company, which was likewise a Utah corporation, and that appellant has regularly succeeded to and is entitled to all the rights of said corporation. The foregoing constitutes the evidence of paper title of appellant. The facts relating to its claim of title by adverse possession will be referred to later.

Mrs. Huntington died about three years after her husband. After Mrs. Huntington's death, Julia Huntington Mellon, the daughter of Dimick B. Huntington and one of the

grantors in the deed of October 2, 1884, was, on October 4, 1887, duly appointed administratrix of the estate of her father, Dimick B. Huntington. Due notice to creditors was given, and she filed an inventory of her father's estate in which she included lot 8 as a whole, a portion of which is the subject of controversy. On November 12, 1887, she filed a petition asking for an order to sell real estate upon the ground that the personal property was insufficient to pay the debts of her father's estate. On January 3, 1888, such an order was granted and a sale had pursuant thereto, and on February 3, 1888, the sale of the following real estate was confirmed, to-wit: "Lots 5, 6, 7, and 8, of block 107, plat 'C,' Salt Lake City survey, except such portions of said lots as were therefore taken by the Denver & Rio Grande Western Railway Company as a right of way for its railroad." The administratrix, on March 13, 1888, duly executed a deed to the purchaser, George D. Amos, in which the lots sold are described as in the foregoing quotation. The exception was contained in the subsequent conveyances, with one or two exceptions, which, however, are immaterial, until lot 8 was conveyed to the respondent in 1905, who claimed to be the owner thereof, with the exception of the four-rod strip, when this action was commenced.

Upon the claim of adverse possession by appellant, the undisputed evidence is to the effect that in 1883 appellant's predecessor in title constructed the railroad between Salt Lake City and Ogden, and laid the track on the four-rod strip heretofore mentioned, and erected its telegraph poles about thirty-three feet east of the center of the strip; that in 1885 or 1886 a fence was constructed along each side of the railroad track along the margin of the four-rod strip, so that a right of way was fenced in four rods wide; that in erecting the fence, when it reached the north boundary of lot 8, the fence was extended along such boundary to the northeast corner of said lot, thence along the east boundary line thereof to the southeast corner of said lot. Southwest from this corner there was a cattle-guard from which a wing fence was joined to the fence ending at the southeast

corner of lot 8 as aforesaid. The appellant, therefore, had inclosed with a board fence all that portion of lot 8 included within the conveyance made by the Huntington heirs in 1884. This fence was maintained during all of the years up to the time of the trial, and appellant had exclusive possession of the triangular parcel in question in connection with the four-rod strip constituting the right of way proper. Appellant at the trial proved, however, that no part of the triangular parcel in question was used for depot or other railroad purposes, and that it was fenced in connection with the four-rod strip constituting the right of way. From 1884 to 1896 appellant returned its property for assessment to the Territorial Board of Equalization, and paid all the taxes, state, county, and municipal, that were levied against it. Up to 1896 it seems that the triangular piece in question was returned for assessment and assessed without separate description but only as railroad property. In 1896, and from that time forward up to and including 1904, the triangular parcel in question was listed for assessment by appellant with the State Board of Equalization as a separate parcel of land, and was described by metes and bounds as land used in connection with its right of way. Appellant, during all of those years, paid all of the taxes assessed against the parcel by the State Board of Equalization. In 1906, the county assessor of Salt Lake county assessed to appellant all of lot 8 except the four-rod strip, and appellant paid the taxes for that year. Appellant conceded at the trial that during all of the years from 1884 to 1906 lot 8 had been assessed by the county assessor as lot 8 merely, with the exception of the years 1904 to 1907, when it was assessed as lot 8, but excepting therefrom the right of way of appellant; and that respondent and its predecessors in interest had paid all of the taxes against said lot 8.

Upon substantially the foregoing facts the court entered judgment in favor of respondent, quieting the title of all of the land described in appellant's complaint to it except the four-rod strip; hence this appeal. Appellant contends that

this judgment is erroneous upon two grounds: (1) That appellant had established a good paper title to the parcel of land in question as against respondent; and (2) that if its paper title is defective, then, under our statute, it had established title by adverse possession.

Referring to the paper title, it will be observed that appellant never obtained complete title from any one. While it is true that under our statutes the title to real property upon the death of an ancestor vests in his heirs, yet such title vests conditionally only, and is subject to claims of the creditors of the deceased owner. When the widow and children of Dimick B. Huntington thus conveyed to appellant's predecessor, the rights of the widow and children in the land were transferred to it, and in case of distribution of the estate such predecessor would have been entitled to the distributive share of the widow and children who joined in the conveyance. But, as the land was sold to pay the debts of the deceased owner, the title vested in the purchaser at such sale. In this case there is no question about the regularity of the proceedings leading up to the administratrix's sale or the jurisdiction of the court; and, further, no question is presented with regard to the interest of the child who did not join in the conveyance under which appellant claims. Lot 8, therefore, was sold to pay the debts of Dimick B. Huntington's estate, and all rights theretofore claimed by appellant's predecessor from the widow and heirs of Huntington passed to the purchaser, except that portion of lot 8 which was not included in the sale. Upon this point appellant contends that all of that portion of lot 8 which had been deeded by the widow and children of Dimick B. Huntington was so excluded, and hence the purchaser at the administratrix's sale obtained title to no part of the triangular parcel constituting the subject-matter of this action. After a careful consideration of appellant's argument and the authorities cited by counsel, and, after applying them to the facts and circumstances disclosed by the record, we are unable to yield assent to appellant's contention upon this point. It is quite true that where a whole parcel of land is de-

scribed and sold, and a reservation of a particular portion is made, which is referred to in general terms only, reference must be had to the physical conditions existing at the time which would in any way identify the excepted portion from the whole piece or parcel sold and conveyed. If, therefore, a certain piece of land is sold and conveyed subject to a certain right of way, or subject to any other existing right, if this right of way or other thing be marked upon the ground, such marking is ordinarily sufficient to identify the part excluded from the general grant. This is the effect of all the authorities cited by counsel, among which we refer to the following: *Reidinger v. Cleaveland Iron Min. Co.,* 39 Mich. 30; *Rushton v. Hallett,* 8 Utah 277, 30 Pac. 1014; *Hall v. Wabash Ry. Co.,* 133 Iowa 714, 110 N. W. 1039; *Heinzman v. Winona, etc., Ry.,* 75 Minn. 235, 77 N. W. 956.

There are circumstances present in this case, however, which, to our minds, clearly distinguish it from the cases cited above, and from all others in which the doctrine invoked by counsel has been applied. It must be remembered that after the conveyance by the Huntington heirs the land was sold to pay the debts of the Huntington estate. One of the grantors in the deed by which a part of lot 8 was conveyed was the administratrix of the Huntington estate. She was thus perfectly familiar with what had been sold. Moreover, the matter was brought to the attention of the probate court, who was not bound to except any part that had been conveyed by the Huntington heirs from the sale, any more than the administratrix was bound to do so. All of lot 8 could have been sold. When the administratrix made the exception, which was allowed by the court, is it not reasonable to assume that if it had been intended to exclude all from the administratrix's sale which had been conveyed by the Huntington heirs the former deed would have been referred to, to which deed the administratrix was a party and which was a matter of record at the time rather than make the exception in the language in which it is

made, namely, "except such portions . . . . as were theretofore taken . . . as a right of way for its railroad?" This, to our minds, is significant, since it refers to what was taken as a right of way for a railroad, and not to what had been transferred by deed. It was just as easy to refer to the deed as it was to the right of way taken. In the deed the part conveyed was specifically described, and a reference to it as the portion to be excluded would have established with absolute certainty the portion intended to be excluded from the administratrix's sale. That this was not done under the circumstances is, to our minds, a strong, if not a conclusive, circumstance that all that was intended to be excluded was the four-rod strip which constituted the right of way proper. To the north of lot 8 it was fenced on both sides of the track, and through lot 8 there was a fence to the west thirty-three feet from the center of the track, and to the east the telegraph poles were erected a like distance from the center of the track. There thus was a clearly defined right of way four rods in width. The administratrix, in view of her interest in the property, and of her long residence in Salt Lake City, must be presumed to have known the actual conditions, and in view of this, if she had intended to exclude the triangular parcel of land in question, she, in all probability, would have referred to the fence as located for the purpose of identifying that which she excluded, even though she did not refer to the deed itself. In this connection it is a matter worthy of note that the employees of appellant likewise considered this parcel as separate and distinct from the right of way. After 1896 it was always described as a piece of land by metes and bounds, and not as constituting an integral part of the right of way. If it was not a part of the right of way in 1896 and thereafter, it was not prior to that time. Moreover, the purchaser at the administratrix's sale had a right to rely upon the usual and generally accepted meaning of the term "right of way." By this term, as disclosed by the authorities **4** is ordinarily meant a strip of ground used or occupied by the railroad company for its track and mat-

ters directly connected therewith. This strip may not be of the same width at all points, nor used in the same manner all along the line. But where a strip of a distinct width is appropriated by the railroad company as a right of way, which is marked upon the ground by fences or otherwise, and reference is merely made to the right of way, it cannot be assumed that by such reference a strip of larger dimensions was intended than the general width of the right of way as it was appropriated. While additions may no doubt be made to the strip, such additions would not be integral parts of the right of way, but would be treated just as appellant's employees treated the parcel in question, as additional parcels of land claimed by the company. When, therefore, reference is made to the right of way, merely, it should be limited to the right of way as originally taken, and not to the additional parcels of land subsequently added. This, it seems, is what the courts mean when they refer to and attempt to define a right of way. Among other cases that might be cited, we refer to the following: *Keener v. Union Pacific Ry. Co.* (C. C.), 31 Fed. 126; *Joy v. St. Louis,* 138 U. S. 1-44, 11 Sup. Ct. 243, 34 L. Ed. 843; *Pfaff v. Terre Haute, etc., Ry.,* 108 Ind. 144, 9 N. E. 93; *Postal T. C. Co. v. Southern Ry. Co.* (C. C.), 90 Fed. 30.

We are of the opinion, therefore, that the appellant did not obtain paper title to the parcel in dispute, and hence the court did not err in its conclusions upon this point.

Did the appellant acquire title to the parcel in question by adverse possession? We shall assume that, with the exception of one statutory requirement, the time, character, and manner of appellant's possession was sufficient to establish title by adverse possession. Section 2866, Comp. Laws 1907, which has been in force in this state since 1888 (section 3137, Comp. Laws 1888), provides as follows:

"In no case shall adverse possession be considered established under the provisions of any section of this Code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party or persons, their predecessors, and grantors have paid all taxes which have been levied and assessed upon such land according to law."

Assuming that the section when enacted in 1888 had no retroactive effect, appellant, nevertheless, had not acquired title by adverse possession at the time it became effective, and after that time it could not acquire title by adverse possession unless it complied with the provisions of this section. This has been the uniform holding of the Supreme Court of California in construing a statute of which section 2866 is a copy. (*McDonald v. Drew*, 97 Cal 266, 32 Pac. 173; *McNoble v. Justiniano*, 70 Cal. 397, 11 Pac. 742; *Carpenter v. Lewis*, 119 Cal. 18, 50 Pac. 925; *Ross v. Evans*, 65 Cal. 439, 4 Pac. 443; *Baldwin v. Temple*, 101 Cal. 396, 35 Pac. 1008.) See, also, upon this subject, 1 Cyc. 1106.

Appellant claims that it has complied with the statute and has paid all of the taxes assessed against the parcel in question ever since it took possession of it in 1884. As we have seen, up to 1896, no mention of this parcel was made by appellant in listing its property with the Territorial Board of Equalization for assessment. Whether it was or was not assessed to appellant up to that time is therefore a matter of mere conjecture. From and after 1896 it was listed by appellant with the State Board of Equalization as a separate parcel of land, and not as being an integral part of the right of way proper. Thus, after that it cannot be claimed that it was assessed by merely referring to appellant's right of way as such. If, therefore, it had been assessed merely as a right of way, and had not also been assessed by the local assessor as lot 8, there might be some ground for claiming that appellant had paid all of the taxes upon this property, including the parcel in question. But the difficulty is that appellant did not have title to this parcel of ground, and therefore it cannot be said that it was its property. During all of the time since 1873, when Dimick B. Huntington became the owner of lot 8, of which the parcel in question is a part, said lot has been treated as a separate and distinct lot for the purposes of taxation. During all of the time it has been assessed as such, and taxes have been levied and paid thereon by the owners thereof, including respondent.

The conditions that are presented in this case may therefore be said to be unique, for the reason that for the purposes of assessment and taxation railroad property is placed under the control and jurisdiction of the State Board of Equalization, while property generally is placed under the control and jurisdiction of the local assessor. The railroad company was powerless to oust the jurisdiction of the county assessor by simply claiming a certain piece of land as railroad property. Portions of lot 8 on both sides of the track always remained outside of the right of way proper as taken by appellant's predecessor. For the purposes of assessment and taxation these portions always remained a part of the original lot 8, and were therefore within the jurisdiction of the county assessor and remained so until such time as the railroad company would obtain the title thereto. From the time it would have obtained title, and not before, could the railroad company lawfully list it as railroad property and oust the county assessor of jurisdiction. It might be that in case property claimed by the railroad company, and of which it has possession, was not assessed by the local assessor but was assessed by the State Board of Equalization, or not assessed at all, the railroad company might acquire title by adverse possession after the seven-year period. This would be so, however, upon the ground that the railroad company in such a case would have paid all the taxes that were assessed against the property. If it were held otherwise, the railroad company could claim any one's property and have it assessed by the State Board of Equalization and pay the taxes thereon as such, and thus prevent the individual owner from paying the taxes on his own property under the description by which it is generally known. No doubt appellant could have acquired title by adverse possession to all of lot 8 the same as anyone else could have done, but, in order to have done so, it would have been required to pay the taxes assessed against lot 8, by that description, the same as anyone else would have been required to pay them. By assessing lot 8 the parcel in question was always assessed as a part of it. (*Baldwin v. Temple, supra.*)

Appellant did not pay the taxes on lot 8 except for the year 1906. Upon the other hand, respondent and its predecessors in interest, during all of the years since 1882, paid the taxes assessed against lot 8. If the county assessor had assessed lot 8 by one description to appellant as claimant, and by another, or by the same description, to respondent as owner, it would then be a case of assessing the same property to two claimants, either one or both of whom could have paid the taxes. Under such circumstances the question would arise as to which one of the claimants, in contemplation of law, had paid the taxes. The authorities under such circumstances are to the effect that the one who pays first is to be deemed as having paid the taxes for the purpose of acquiring title by adverse possession. (*Carpenter v. Lewis,* 119 *Cal.* 18, 50 Pac. 925; *Ely v. Brown,* 183 Ill. 575, 56 N. E. 181; *Bolden v. Sherman,* 101 Ill. 483; 1 Cyc. 1109.)

This doctrine is based upon the theory that the state can require taxes to be paid but once each year, and when paid the claim for taxes is discharged, and a subsequent or second payment is a mere voluntary payment and of no legal effect. This doctrine, however, cannot be applied to the facts in this case. Under the undisputed evidence, either the State Board of Equalization had jurisdiction to make the assessment for taxation of the property in question, or the county assessor had it. The right to assess the same property could not exist in both at the same time. We think the power to assess lot 8 was vested in the county assessor, and that the State Board of Equalization had no jurisdiction over any part of lot 8 except the strip taken and occupied by the railroad company as a right of way. If the railroad company desires to claim title by adverse possession to property other than such as has been used and occupied distinctively for railroad purposes, it must prove that it has paid all the taxes that were assessed by the local authorities, or show that such assessment was made without authority, or that the taxes levied against the property were void for some other reason. We think no one would seriously contend that an individual might take possession of any portion of the right of way or

depot grounds or other real property used by a railroad company for railroad purposes, and, by giving such portion a particular description for the purposes of taxation, he could thereby withdraw the property from the jurisdiction of the State Board of Equalization and place it within the power of the local assessor, and when he had done so succeed in his claim that he, the claimant, and not the railroad company, had paid the taxes and hence had acquired title by adverse possession. Yet, if what the appellant claims in this case can be sustained, then we can see no good reason why an individual may not, by his own act, determine what is and what is not railroad property for the purposes of assessment and taxation. Would not the question, namely, if the railroad company may do this, why cannot an individual do so, have to be answered either in the negative or the affirmative in favor or against either claimant? We are of the opinion, therefore, that appellant has not brought its claim of adverse possession within the purview of section 2866, *supra,* and hence this claim must fail.

Nor is the contention that appellant has acquired title by prescription tenable. It is true that this court has repeatedly held that a right to an easement may be acquired by a continuous use for a period of twenty years. This ruling is based upon the fact, however, that our statutes are silent with regard to easements generally, and hence the common law with respect thereto prevails in this state. The time and manner of acquiring title to real property by adverse possession is, however, regulated by the statutes of this state. By section 2498, Comp. Laws 1907, it is expressly provided that "the Revised Statutes shall be the law of this state respecting the subjects to which they relate." This, by implication at least, excludes the common law from all subjects that are regulated by statute. As we have seen, the time and manner of acquiring title to real property by adverse possession are provided for by statute, and hence, in our judgment, the statutory method is the only one by which title by adverse possession can be acquired in this state. Counsel for

appellant, whose diligence and thoroughness are conceded, have not presented any case directly in point on what, under the circumstances of this case, constitutes the payment of taxes, or upon the claim of a twenty-year limitation. Neither have we, by a most careful research, been able to find any cases, and we were thus compelled to solve the questions upon the fundamental principles of equity as we understand them.

We are of the opinion, therefore, that the judgment of the court is right, and it accordingly is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.