## Standard Oil Co. v. City of Barbourville.

(Decided Oct. 4, 1938.)

J. DONALD DINNING, CHARLES G. MIDDLETON and VICTOR A. JORDAN for appellant.

J. B. CAMPBELL and G. M. MANNING for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The Standard Oil Company brought this action to enjoin the city of Barbourville from collecting taxes for the years, 1932, 1933, 1934, and 1935 on certain personal property located on a triangular tract of land adjoining the Louisville and Nashville Railroad Company's right of way. The property sought to be taxed consists of oil tanks and other equipment located on a tract of land owned by the Louisville and Nashville Railroad Company and leased by it to the appellant. Whether or not the property in question is subject to taxation by the city of Barbourville depends upon the proper location of the eastern boundary line of the city. Appellant claims that the triangular tract of land on which the property is located lies without the city limits of Barbourville, and the city contends that it lies within the city limits.

In 1887 a 100-foot right of way was conveyed to the predecessor of the Louisville & Nashville Railroad Company. In 1901 the Louisville & Nashville Railroad Company acquired the fee simple title to the triangular tract of land in question, which adjoins its right of way on the east. At that time it was within the corporate limits of the city. The tract of land is bounded on one side by a public highway which enters the city limits and crosses the Louisville and Nashville railroad diagonally. In order to avoid the burden of maintaining this highway, the city of Barbourville, in 1909, passed an ordinance eliminating from the city boundary a certain tract in this vicinity. The land stricken from the city is thus described in the ordinance:

"Beginning on stone No. 1, on the outside boundary of the city of Barbourville opposite and east of the railroad crossing; thence west about 275 feet to the Louisville & Nashville Railroad Company's right of way to a stone No. 2; thence with said Company's right of way to a stone No. 3, in the outside line of said city of Barbourville, and at the corner of William Lock's fence, thence northeast with said outside line to a stone No. 4, thence northeast and with said outside line to the beginning."

It is the city's contention that the call, "thence with

said Company's right of way, to a stone No. 3," follows the public highway and the western line of the triangular lot in question, thus leaving the lot in the city, while appellant claims that it follows the railroad 100-foot right of way, thus placing the lot outside the corporate limits of the city. The circuit court adjudged that the lot was within the corporate limits of the city; that the personal property located thereon was subject to assessment for taxation for city purposes; and dismissed the plaintiff's petition. Two engineers introduced by the plaintiff surveyed the line in dispute and fixed it as running with the east line of the company's 100-foot right of way. A stone which they identified as stone No. 3 was found in the east line of the railroad right of way and on William Lock's line. An official map of the city of Barbourville, prepared for the city by J. R. Murphy in 1921, showed that the boundary line of the city at the point in question followed the east line of the 100-foot railroad right of way. After this litigation began F. G. Alexander, a civil engineer, was employed by the city to prepare a map showing the corporate limits of the city. The map prepared by him showed that the boundary line of the city at the point in question followed the eastern line of the 100-foot railroad right of way. He found stone No. 3 at a point in the eastern line of the 100-foot right of way as contended by the appellant. The stone was set in the ground, and was about 6 inches square. He failed to find a stone at the point where the city contends No. 3 is located.

In 1910 the city adopted an ordinance fixing its boundary lines. A part of the description in that ordinance, which includes the line in dispute, reads:

"Thence up the ridge to a point 100 yards from said right of way measuring a line running at right angle, and from same: Thence a parallel line with said right of way one hundred yards from same, to a point marked by a stone No. 1: Thence west about 100 yards to a stone No. 2 at the L. & N. right of way where the county road crosses said right of way a short distance south of the Louisville & Nashville Depot: Thence with said right of way to stone No. 3; at the corner of William Lock's fence: Thence with William Lock's fence running a straight line to the South Bank of the Cumberland River."

Appellant cites and relies upon a number of cases from foreign jurisdictions, such as Williams v. Western Union Railway Company, 50 Wis. 71, 5 N. W. 482; Rio Grande Western Railway Company v. Salt Lake Investment Company, 35 Utah 528, 101 P. 586; Chicago, B. & Q. Railroad Company v. Paddock, 75 Ill. 616; Oregon Short-Line Railroad Company v. Gooding, 6 Idaho 773, 59 P. 821, in support of its contention that the term "right of way" when applied to railroad properties, means the strip of a distinct width appropriate for railroad purposes, and does not include other properties owned by the railroad company, even though the latter may be contiguous to the right of way. It is not necessary to invoke the rule announced in these cases, since the overwhelming weight of evidence is to the effect that the boundary line of the city at the point in question follows the eastern line of the 100-foot railroad right of way and that the triangular lot on which is located the property sought to be assessed for taxation is outside the corporate limits of the city.

Appellee filed a motion to dismiss the appeal, and the motion has been passed to the merits. Appellee's argument in support of the motion seems to be based on the theory that appellant has failed to follow the procedure prescribed by section 747 of the Civil Code of Practice, which reads in part:

"When an appeal shall be taken from any judgment granting, modifying, perpetuating or dissolving any injunction, the court which rendered the judgment may, in its discretion, if the ends of justice so require, at the time the appeal is taken, make an order suspending, modifying or continuing the injunction during the pendency of the appeal, upon such terms as to bond or otherwise as may be proper for the security of the rights of the opposite party. Either party, within twenty days after the entry of such order, may take a transcript of the record, or all parts thereof appertaining to the injunction, and upon reasonable notice in writing to the opposite party, move the Court of Appeals, or, if in vacation, any judge thereof, to revise the order of the lower court, and finally determine how far the injunction shall be suspended, modified or continued pending the appeal."

No injunction was ever granted. The circuit court

entered a final judgment denying the relief sought by the plaintiff, dismissing its petition and adjudging that it was liable for the taxes, the collection of which it sought to enjoin. It is from that judgment that the plaintiff has appealed. It did not see fit to avail itself of the procedural remedy provided by section 747 of the Civil Code of Practice and was not required to do so. It is entitled to have the case determined on its merits. The motion to dismiss the appeal is overruled.

The judgment is reversed, with directions to enter a judgment granting the relief prayed for in plaintiff's petition.